NALL *v.* THE FARMERS WAREHOUSE COMPANY *et al.*

1. Where certain persons, intending to act for and on behalf of others, do in fact, in the execution of a written agreement for the rent of a warehouse, contract not only for and on behalf of their several principals, but also each for and on behalf of himself, they thus bind themselves personally to the performance of the covenants therein stated; all of the parties are principals, and if they subsequently, in pursuance of the contract, engage in the business of warehousemen, and as such receive the property of another, the persons engaging in such business are personally answerable for the faithful execution of the contract of bailment, and cannot excuse a non-performance by showing by parol that in the conduct of the warehouse business they were acting for their principals and not for themselves.
2. The evidence showing that all the parties to the agreement, both the alleged principals and the alleged agents, engaged in the warehouse business, and as warehousemen received the cotton of the plaintiff, and refused either to deliver the same or to account therefor on demand, the grant of a nonsuit was error.

April 15, 1895.  Brought forward from the last term.  Code, §4271(a-c).

Appeal.   Before Judge SMITH.   Spalding superior court.   January term, 1894.

Thomas Nall brought suit against the Farmers Warehouse Company, J. H. Mitchell, B. N. Barrow, J. J. Elder, H. T. Patterson and F. M. Scott, to recover the value of four bales of cotton.   The court granted a nonsuit, on the ground that there was not sufficient evidence to authorize the plaintiff to recover against any of the defendants.

The evidence shows, that on May 7, 1889, a written contract was made between "the committee of the

county alliance of Spalding county, to wit, J. H. Mitchell, B. N. Barrow, J. J. Elder, H. T. Patterson and F. M. Scott, each for himself and for the order he and they represent, of the one part, and Thomas Nall and R. A. Thompson, proprietors and owners of the brick warehouse on Solomon street, Griffin, Ga.," of the other part, whereby the parties of the first part leased from the parties of the second part said warehouse "for the term of one year, with the privilege of same from year to year for five years if they so elect," for the rent of which they were to keep the property insured, pay all taxes, and pay to R. A. Thompson $200 for each year; the parties of the first part to have entire and exclusive control of the warehouse business, including weighing, storing, buying and selling cotton, etc. It was further agreed, that Thomas Nall, of the second part, should be permitted to truck into the rear of the warehouse such cotton as he might purchase elsewhere. This was signed by the seven individuals named. It was indorsed: "Transferred, by order of county alliance, to the Farmers Warehouse Company. July, 1891. (Signed) W. E. H. Searcy, chairman warehouse committee."

Plaintiff introduced also four receipts, all alike save as to name of person to whom issued, date, number, marks and weights. One of these was as follows:

"Alliance Brick Warehouse, Griffin, Ga., Nov. 1, 1890. "B. N. Barrow, manager.        Received from W. S. Head one bale cotton, marks, numbers, etc., as per margin, subject to the presentation of this receipt only, on paying customary expenses and all advances, acts of Providence and fire excepted.   .   .   [Signed] Mitchell, for the manager."

Plaintiff testified: The lease contract was executed by the parties whose names appear thereto. The parties of the first part carried on warehouse business at said warehouse during the cotton season of 1890 and 1891. B. N. Barrow was the manager, and J. C. Williams and ——

Mitchell were the salesmen or weighers of cotton. I bought the cotton from the persons to whom and in whose names the receipts in evidence were given, during the season of 1890–91; and before or about March 1, 1891, I demanded of Barrow, as manager and personally, the cotton described in these receipts; he failed to produce or deliver it, and I have never been able to get it. The four bales were worth $165. When defendants came to negotiate for the rent of the warehouse, they came as a committee of the alliance, and it was for the purpose of running an alliance warehouse. I thought it would be to my advantage to have an alliance warehouse there; and I agreed'to and have paid part of the rent to Thompson, and paid H. C. Burr $50 each year for the rent of his fourth interest in the warehouse. The lease under the contract will not expire until September 1, 1895.

JAMES S. BOYNTON, for plaintiff.

R. T. DANIEL, HAMMOND & CLEVELAND and T. E. PATTERSON, for defendants.

ATKINSON, Justice.

It is only necessary to add, by way of explanation, to the head-notes and the official report in this case, that it will appear from the latter that in the execution of the contract of rental the defendants personally sued in this case, contracted not only as a committee from the county alliance of Spalding county, but each for and on his own account and for and on account of the order he and they represented. It will be observed that the contract of rental, as executed, was executed by the parties in this case, not only in their representative, but in their personal capacity. The undisputed evidence is, that the parties of the first part to this contract of rental carried on a warehouse business upon the rented premises. During the time they so conducted this business the

plaintiff committed to their keeping the property for and on account of which this suit is brought. The court granted a nonsuit, and we think this was error. The bailment had been established, a refusal of delivery upon demand likewise shown, and the damage proven. This makes the plaintiff's case, and, uncontradicted, he was entitled to recover.

Let the judgment of the court below be *Reversed*.